NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARIA EASON, | : | |
| | : | Civil Action No. 07-3646 (SRC) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court on the appeal by Plaintiff Maria Eason ("Plaintiff") of

the final decision of the Commissioner of Social Security ("Commissioner") determining that she

is not eligible for a period of disability, Disability Insurance Benefits, or Disabled Widow's

Insurance Benefits under the Social Security Act ("the Act").  This Court exercises jurisdiction

pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral

argument pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision is supported by

substantial evidence and is hereby **AFFIRMED**.

## I.  BACKGROUND

Plaintiff was born on January 9, 1951 in the Dominican Republic, completed school

through the sixth grade, and came to the United States in 1979.  (Tr. 67, 275.)  Although, in her

Disability Report, she stated that she speaks and reads English (Tr. 62), it was later clarified that

she only has limited proficiency with the language (Tr. 82, 270-302).  She and her deceased ex-husband, Henry A. Eason, were married on August 1, 1978 and divorced on December 31, 1990. (Tr. 246.)

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 14, 2004, claiming disability beginning on September 25, 2003.  (Tr. 52.)  On the same day, she filed an application for Disabled Widow's Insurance Benefits ("DWIB") based on the January 16, 1998 death of her ex-husband, Henry Eason.  (Tr. 245-46.)  In her Disability Report, Plaintiff claimed that her ability to work is limited by "[p]ain in legs and lower back, depression, [and] asthma[.]" (Tr. 62.)  She explained how these ailments affect her: "I cannot stand too long or sit too long[;] I have a[]lot of pain when I sit or stand; I have pain when I walk; my feet have a[]lot of pain and I have trouble wearing any kind of shoes, I wear nothing on my feet at home only when I go out due to pain."  (Tr. 62-63.)  She wrote that she stopped working on September 25, 2003, because she "felt very sick and had lots of pain and could not do the work of lifting and doing anything in the house; I have trouble climbing stairs[,] etc[.]"  (Tr. 63.)

Plaintiff's DIB and DWIB applications were denied initially and upon reconsideration. (Tr. 23-34.)  Plaintiff then requested a hearing.  (See Tr. 40.)  A hearing was held before Administrative Law Judge ("ALJ") Joel H. Friedman on October 19, 2005 during which Plaintiff testified.  (Tr. 269-302.)  At the hearing, Plaintiff amended her application to be for a closed period of disability between September 25, 2003 to December 15, 2004, as she returned to work in a position that required a lower level of exertion in December 2004.  (Tr. 273-74.)  ALJ Friedman issued a decision on January 18, 2006 finding that Plaintiff was not disabled during the period under review, September 25, 2003 to December 15, 2004.  (Tr. 23, 30.)  Plaintiff

requested a review of the decision by the Appeals Council on March 14, 2006.  (Tr. 10-11.)

After granting Plaintiff additional time to present her argument (Tr. 8-9), the Appeals Council

denied her request for review on June 1, 2007 (Tr. 5-7).  Plaintiff filed the Complaint presently

under review on August 3, 2007.

## II.  DISCUSSION

### A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C.

§ 405(g) and must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. § 405(g); Stunkard v. Sec'y of Health and Human Servs., 841 F.2d 57, 59

(3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S.

197, 229 (1938)).  Substantial evidence "is more than a mere scintilla, but need not rise to the

level of a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

The reviewing court must consider the totality of the evidence and then determine whether there

is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d

412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.

1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993).  If the ALJ's findings of

fact are supported by substantial evidence, this Court is bound by those findings, "even if [it]

would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d

Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.      Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for DIB or DWIB, a claimant must demonstrate that he or she "is under a disability[.]" 42 U.S.C. § 402(e)(1) (DWIB); 42 U.S.C. § 423 (DIB). A claimant is deemed "disabled" under the Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he or she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To

4

demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.      The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1]  20 C.F.R. §§ 404.1520(a)(4)(i), (b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. 404.1520(c).  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

under the Social Security Act.  If the claimant does not suffer from a listed impairment or its

equivalent, the analysis proceeds to step four.

In Burnett v. Commissioner of Social Security, the Third Circuit found that, to deny a

claim at step three, the ALJ must specify which listings[2] apply and give reasons why those

listings are not met or equaled.  Burnett, 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000).  In Jones

v. Barnhart, 364 F.3d 501 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not

require the ALJ to use particular language or adhere to a particular format in conducting his

analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the

record and explanation of findings to permit meaningful review."  Id. at 505.  An ALJ satisfies

this standard by "clearly evaluating the available medical evidence in the record and then setting

forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most

relevant Listing."  Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional

capacity ("RFC") to perform his past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e).  If the

claimant is able to perform his past relevant work, he or she will not be found disabled under the

Act.  20 C.F.R. § 404.1520(a)(4)(iv).  In Burnett, the Third Circuit set forth the analysis required

at step four:

> In step four, the ALJ must determine whether a claimant's residual functional
> capacity enables her to perform her past relevant work. This step involves three
> substeps: (1) the ALJ must make specific findings of fact as to the claimant's
> residual functional capacity; (2) the ALJ must make findings of the physical and
> mental demands of the claimant's past relevant work; and (3) the ALJ must
> compare the residual functional capacity to the past relevant work to determine
> whether claimant has the level of capability needed to perform the past relevant

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R.
Subpart 404, Part P, Appendix 1.

work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his or her past work, and his or her

condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

demonstrate that there are other jobs existing in significant numbers in the national economy that

the claimant can perform, consistent with his medical impairments, age, education, past work

experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1520(a)(4)(v),

404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the

claimant will not be found disabled.  20 C.F.R. § 404.1520(a)(4)(v).  Additionally, pursuant to 42

U.S.C. § 423(d)(2)(B), in the fifth step, the Commissioner "must analyze the cumulative effect of

the claimant's impairments in determining whether she is capable of performing work and is not

disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

When the claimant has only exertional limitations, the Commissioner may utilize the

Medical-Vocational Guidelines found in 20 C.F.R. Subpart 404, Part P, Appendix 2 to meet the

burden of establishing the existence of jobs in the national economy.  These guidelines dictate a

result of "disabled" or "not disabled" according to combinations of factors (age, education level,

work history, and residual functional capacity).  The guidelines also reflect the administrative

notice taken of the numbers of jobs in the national economy that exist for different combinations

of these factors.  20 C.F.R. Subpart 404, Part P, App. 2, Paragraph 200.00(b).  When a claimant's

vocational factors, as determined in the preceding steps of the evaluation, coincide with a

combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual

is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant

may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, App. 2,

Paragraph 200.00(a).

Additionally, throughout the disability determination process, the Commissioner must "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of" sufficient severity to qualify the claimant for benefits. 42 U.S.C. § 423(d)(2)(B). However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him or her for benefits. See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

Finally, while Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as its interpretation in Jones v. Barnhart, to every step of the decision. See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006). Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format." Id.

## D.     The ALJ's Decision

In brief, the issues before the ALJ were whether Plaintiff is entitled to a period of disability, DIB, and DWIB under sections 216(i), 223, and 202(e) of the Act beginning on September 25, 2003 and ending on December 15, 2004. (Tr. 15, 21.) It is undisputed that Plaintiff meets the non-disability requirements for DIB and DWIB and was insured for disability benefits through the date of the ALJ's decision. After examining the record, the ALJ determined that 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had severe impairments of hypertension and arthritis but no

severe impairment of depression; 3) at step three, Plaintiff's "impairments do not meet or medically equal one of the listed impairments in [20 CFR Part 404], Appendix 1, Subpart P, Regulation No. 4"; and 4) at step four, Plaintiff retained the RFC to perform her past relevant work as a housekeeper and babysitter.  (Tr. 21-22.)  Underlying his step four conclusion, the ALJ determined that Plaintiff had the RFC to perform "medium work activity[,]" allowing her to "lift up to fifty pounds occasionally and twenty-five pounds frequently.  She is able to stand and[/]or walk at least six hours out of an eight-hour workday and sit up to six hours."  (Tr. 20, 22.)  Due to the ALJ's determination at step four, no step five analysis was required.  In conclusion, the ALJ determined that Plaintiff "was not under a disability as defined in the Social Security Act[] during the period September 25, 2003 to December 15, 2004," noting that Plaintiff "returned to substantial gainful activity as of December 15, 2004.  (Tr. 22.)

In coming to this determination, the ALJ relied on Plaintiff's testimony at the October 19, 2005 hearing (Tr. 269-302), a July 8, 1992 MRI from the Medical College of Atlanta (Tr. 118-25); medical records from a December 6, 2002 emergency room visit at Suburban Hospital in Bethesda, Maryland (Tr. 129-51); medical records and laboratory reports dated December 9, 2002 to February 23, 2004 from the Proyecto Salud clinic (Tr. 174-91); a report from a February 7, 2004 psychological examination conducted for the Division of Disability Determination Services ("DDS") by Anna Marie Resnikoff, Ph.D.; a February 18, 2004 DDS Psychological Review Technique form by Jane Stafford, Ph.D. and Michael Britton Ed.D. (Tr. 156-69); a February 20, 2004 consultive examination for DDS by Ronald Bagner, M.D. (Tr. 171-73);  a March 6, 2004 consultive examination for DDS by Dr. Francky Merlin (Tr. 192-201); an impression from a lumbar sacral spine x-ray performed on April 1, 2004 by Frank Aguirre, M.D. (Tr. 203); an April 5, 2004 consultive examination for DDS by Rashel Potashnik, M.D. (Tr. 204-

05); and medical records from November 4, 2004 to October 5, 2005 from Jewish Renaissance

Medical Center and Raritan Bay Medical Center (217-35).  (Tr. 18-20.)

      **E.**    **Plaintiff's Appeal**

      Plaintiff contends that the Commissioner's determination is not supported by substantial

evidence and seeks a reversal of the Commissioner's final decision and an Order requiring the

payment of benefits to Plaintiff.  (Pl.'s Br. 1-2, 13-14.)  In the alternative, she requests a remand

of the decision for a new hearing and a new decision.  (Pl.'s Br. 1-2, 13-14.)  Specifically,

Plaintiff's first argument is that the ALJ's RFC determination is "in direct contradiction to the

medical evidence of record" (Pl.'s Br. 14), namely that the ALJ's "decision fails to mention [that

Plaintiff was diagnosed with arthritis of both sacroiliac joints], never mentions the osteoporosis

and rejects all indicia of a psychiatric problem even though [the ALJ's decision] readily admits

that [P]laintiff was admitted to the emergency room with a diagnosis of major depression

recurrent."  (Pl.'s Br. 18 (emphasis omitted).)  As part of this argument, Plaintiff also asserts that

the ALJ discounted evidence that she is in chronic pain and her "ability to reason, understand and

function intellectually have been compromised."  (Pl.'s Br. 18.)  Plaintiff's second argument is

that "the decision makes no comparison between the tasks of past work and the Plaintiff's RFC"

(Pl.'s Br. 20), in that it fails to explain "how [P]laintiff can perform this medium type activity on

a sustained basis, [and] the decision also ignores [P]laintiff's psychiatric difficulties" (Pl.'s Br.

23).

      Plaintiff's argument that the ALJ's decision is against the weight of the evidence due to

the ALJ's failure to account for Plaintiff's diagnoses of arthritis in both sacroiliac joints and

osteoporosis is incorrect, as the ALJ specifically considered all of these ailments in his decision,

and his conclusions relating to those conditions were supported by substantial evidence.

10

Plaintiff's arthritis and osteoporosis were both directly cited by the ALJ in his discussion of April 1, 2004 x-rays of the lumbosacral spine performed by Dr. Aguirre.  (Tr. 19, 203 (Dr. Aguirre's report), 204-05 (Dr. Potashnik's impression from the x-ray).)  The ALJ wrote that the x-ray showed "[s]light generalized osteoporosis was also apparent with sclerosis along the articular margin of both sacroiliac joints[.]" (Tr. 19.)  This is directly in concert with Dr. Potashnik's impression, which noted "[a]rthritic changes, slight narrowing of posterior aspect of intervertebral space L5-S1, with questionable slight encroachment over the neural canal at this level.  Arthritic changes of both sacroiliac joints.  Slight generalized osteoporosis, segmental calcification over the wall of the lower abdominal aorta."  (Tr. 204-05; see also Tr. 203 (Dr. Aguirre's substantively identical impression).)  In analyzing this information and finding that Plaintiff's subjective complaints were not supported by the medical evidence, the ALJ noted that

> [t]he MRI showed only a bulging disc and the x-ray only some minimal arthritis and slight narrowing of the vertebral canal . . . At the two consultive examinations, the only positive finding was her own report of lumbar pain on movement.  She had normal range of motion, full strength, no sensation deficits, no observable spasm and negative straight leg raise testing.  She was observed to have no difficulty with transfers and to walk with a normal gait.  Dr. Resnikoff also observed that she was able to sit comfortably with crossed legs throughout her examination, despite allegations of severe pain while sitting.

(Tr. 20.)  As such, Plaintiff's statement that "the decision fails to mention the sacroiliac problem [and] never mentions the osteoporosis" (Pl.'s Br. 18) is in error.  Furthermore, the ALJ's conclusions relating to those ailments, namely that Plaintiff had a severe impairment of arthritis but no impairment from osteoporosis and no impairment that meets or medically equals a listed impairment (Tr. 21-22), are supported by substantial evidence due to the ALJ's consideration and discussion of Plaintiff's complaints, Plaintiff's background, and the medical evidence in coming to his conclusion.  See Blalock, 483 F.2d at 776; Rivera, 164 F. App'x at 262.

Plaintiff also incorrectly asserts that the ALJ's decision "rejects all indicia of a psychiatric problem even though it readily admits that [P]laintiff was admitted to the emergency room with a diagnosis of major depression recurrent[.]"  (Pl.'s Br. 18 (emphasis omitted).)  The ALJ considered all of the psychiatric evidence in the record and explained his determination that Plaintiff did not suffer from a severe impairment.

First, the ALJ considered the records of Plaintiff's psychiatric complaints.  He noted that the medical record in this case only contains one instance where Plaintiff sought psychiatric treatment: a December 2, 2002 emergency room visit where she was diagnosed with "major depression, recurrent, without psychosis" for which "[s]he was prescribed Zoloft and referred to an outpatient psychiatrist[.]"  (Tr. 18.)  The ALJ's summary is reflected in the hospital records, which note that Plaintiff was sent home with a clinical impression that included depression, a prescription for Zoloft, and a referral to a mental health clinic.  (Tr. 131.)  The ALJ also considered at length the report from Dr. Resnikoff's February 3, 2004 mental status evaluation of Plaintiff for DDS. (Tr. 18.)  In summarizing that report, the ALJ noted that Plaintiff

> was not receiving any psychiatric treatment and said that she was not planning to seek treatment.  She reported that she had gone to a psychiatrist twice in Maryland and then stopped because she didn't want to pay for it.  She reported symptoms of sleep disturbance, lack of energy and crying spells.  She had samples of medication and outdated prescriptions with her. [Dr. Resnikoff] noted that [Plaintiff] was able to elaborate upon her responses, displayed spontaneity and engaged in conversation.  She also noted that she was nicely dressed, with make-up and jewelry, and that she reported that she cooked and cleaned everyday.  She was able to perform memory and concentration exercises and was oriented to time, place and person.  No evidence of a thought disorder was apparent and she was not preoccupied with her thoughts.  She denied any hallucinations.  The doctor noted that she had never really been involved in any therapy or bereavement groups after the loss of her son.  Her mood was sad and anxious and her intellectual functioning was noted to be limited.  The doctor felt that she displayed a weakness with organization and retrieval skills with learned material, but noted that her overall short term memory skills were intact.  She made no diagnosis and only indicated stressors of bereavement issues of the loss of her son

and unemployment.

(Tr. 18.)  The ALJ's summary is supported by Dr. Resnikoff's report (Tr. 152-55) and the

doctor's diagnostic impression of

| | |
|---|---|
| Axis I: | V code - recent bereavement issues |
| Axis II: | None |
| Axis III: | Complaints with sinus problems, disc problems, and overall chronic pain |
| Axis IV: | Psychological stressors include history of the loss of a child 28 years old, loss of ex-husband due to cancer, unemployment, medical concerns |
| Axis V: | GAF present and past |

(Tr. 155).  After discussing Dr. Resnikoff's report, the ALJ noted that DDS Doctors Stafford and

Britton's February 18, 2004 Psychological Review Technique ("PRT") evaluation concluded that

Plaintiff's "depression was not severe[.]"  (Tr. 18-20.)  That conclusion did not stray from the

conclusions within the PRT evaluation which stated that Plaintiff's "medical dispostion" was

"[i]mpairment(s) [n]ot [s]evere[,]" based on the category of "12.04 Affective Disorders[.]"  (Tr.

156.)  In further support of the ALJ's statement, the PRT evaluation also found Plaintiff to have

the following functional limitations: mild "[r]estriction of [a]ctivities of [d]aily [l]iving"; mild

"[d]ifficulties in [m]aintaining [s]ocial [f]unctioning"; mild "[d]ifficulties in [m]aintaining

[c]oncentration, [p]ersistence, or [p]ace"; and no "[r]epeated [e]pisodes of [d]ecompensation,

[e]ach of [e]xtended [d]uration[.]"  (Tr. 166.)  Consultant's notes within the PRT comment that

Plaintiff "[d]rives, goes out alone, manages money, third party indicates no psych issues as

circled, with attention, following instructions, adapting to stress and changes in routine, all being

intact.  Not severe."  (Tr. 168.)

        The ALJ's conclusions based on the evidence discussed above are supported by

substantial evidence.  After analyzing Plaintiff's psychological limitations, the ALJ concluded

that the evidence does not show that she meets or equals any of the criteria of listing 12.04 nor is her "alleged depression . . . a 'severe' impairment."  (Tr. 19.)  In coming to this conclusion, the ALJ noted Plaintiff's son's death, but also noted that Plaintiff worked for two years after that event and stopped working in order to move closer to family, Plaintiff's lack of psychological treatment and lack of intention to pursue such treatment, and the medical evidence from Dr. Resnikoff's mental examination.  (Tr. 19.)  Further, the ALJ found that Plaintiff's

> allegations regarding her mental impairment are not credible.  She remains able to care for her household, goes out to visit her grandchildren and goes to church. Her mental impairment does not significantly limit her ability to perform basic work activities including the ability to understand, carry out, and remember instructions, as well as the ability to respond appropriately to supervisors, co-workers, and work stresses in a work setting.

(Tr. 19.)  As shown through the discussion of the medical evidence above, the ALJ's conclusion regarding Plaintiff's mental impairment is supported by substantial evidence, as a review of the objective medical facts, medical diagnoses and opinions, a comparison of those with Plaintiff's subjective evidence of her complaints, and Plaintiff's age, educational background, and work history all support the ALJ's finding.  See Blalock, 483 F.2d at 776.  Additionally, although Plaintiff highlights the December 2, 2002 emergency room visit where she was diagnosed with "major depression, recurrent, without psychosis[,]" the rest of the mental evaluations support contrary conclusions and the ALJ's analysis explains his reliance on those other evaluations. Plaintiff holds the burden of proof at steps one through four of the analysis, Bowen, 482 U.S. at 146 n.5, and the absence from the record of multiple treatment records from a mental health professional or complaints of mental impairments having a great impact on Plaintiff's work ability provide substantial evidence to support the ALJ's determination to rely more heavily on the consultive psychiatric reports than on Plaintiff's single medical record.  See Plummer, 186

14

F.3d at 429; see also Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.  As such, the December

2002 diagnosis of depression does not undermine the Commissioner's decision.  See Sassone,

165 F. App'x at 955.

Plaintiff next argues that the ALJ erred, because his "decision makes no comparison

between the tasks of past work and the Plaintiff's RFC" (Pl.'s Br. 20) in that it fails to explain

"how [P]laintiff can perform this medium type activity on a sustained basis" and that the decision

fails to account for Plaintiff's psychiatric impairments.  (Pl.'s Br. 23.)  The ALJ determined that

Plaintiff's RFC permitted her to "lift up to fifty pounds occasionally and twenty-five pounds

frequently[,] . . . stand and[/]or walk at least six hours out of an eight-hour workday and sit up to

six hours."  (Tr. 20, 22.)  He classified this RFC as "medium work activity."  (Tr. 20.)  Plaintiff

does not object to this RFC determination, and this Court notes that the assessment is supported

by the record.  (See, e.g. Tr. 207-14 (RFC Assessment – Physical dated May 3, 2004); Tr. 192-94

(Dr. Merlin's evaluation stating "[t]he patient is able to sit, stand, walk, handle objects, hear,

speak, and travel.  She should not lift or carry heavy objects); Tr. 171-73 (Dr. Bagner's

assessment that "the patient ambulates without difficulty . . . . ").)

After determining Plaintiff's RFC, the ALJ compared the RFC to Plaintiff's past relevant

work as a housekeeper/babysitter, relying on the definitions of those jobs in the Dictionary of

Occupational Titles, and found Plaintiff capable of returning to her past relevant work during the

period between September 25, 2003 and December 15, 2004.  (Tr. 21.)  In coming to this

conclusion, Plaintiff did not explicitly consider Plaintiff's psychiatric complaints.  However,

such consideration was unnecessary as the ALJ had already determined that Plaintiff's

"allegation of a severe impairment of depression is not substantiated" nor does she meet or equal

the criteria under listing 12.04.  (Tr. 19, 21.)  The Court found above that the ALJ's

determination regarding Plaintiff's mental impairments was supported by substantial evidence. Additionally, the ALJ specifically determined that neither the objective nor the subjective evidence supported Plaintiff's contention that she was unable to perform her past work during the period from September 2003 to December 2004.  (Tr. 20.)  In the portion of his decision wherein he rejected Plaintiff's subjective complaints, the ALJ explained

> I also note that [Plaintiff] made no complaints of migraines or dizziness to her doctors.  She reported activities of visiting her grandchildren, attending church and doing light housework during the 14 month period she was out of work. Despite complaining of severe depression since her son died, she stated that she is not interested in obtaining any treatment.  Moreover, after his death, she continued to work for two years and then quit her job so that she could move closer to her family.  The record demonstrates no reason that she could not have done her past work as a housekeeper/babysitter during the period September 2003 to December 2004.

(Tr. 20.)  In short, the ALJ satisfied the requirements for step four analysis of determining whether Plaintiff could perform her past relevant work, because he made "specific findings of fact as to [her] [RFC][,]" made "findings of the physical and mental demands of [her] past relevant work" by relying on the Dictionary of Occupational Titles, and "compare[d] the [RFC] to the past relevant work" in finding that Plaintiff was capable of performing her past relevant work throughout the period under review.  See Burnett, 220 F.3d at 120.  In short, the ALJ's determination that Plaintiff was capable of performing her past relevant work for the closed period under review is supported by substantial evidence in the record.  See Burnett, 22 F.3d at 121; Stunkard, 841 F.2d at 59.

This Court reviewed the ALJ's decision and the record it is based on.  In summary, the ALJ examined the medical evidence of Plaintiff's complaints and concluded that Plaintiff retained the residual functional capacity to perform her past relevant work as babysitter and/or housekeeper for the closed period between September 25, 2003 and December 15, 2004.

16

Although Plaintiff has cited what she believes to be analytical flaws in the ALJ's decision, she has not demonstrated that the ALJ's determination was unsupported by substantial evidence.

### III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.


Dated: August 13, 2008


                                             s/ Stanley R. Chesler
                                        STANLEY R. CHESLER, U.S.D.J.